Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4156 | **DATE** | 12/13/2001 |
| **CASE TITLE** | International Association of vs. Northwest Airlines, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order: We deny Northwest's first motion to dismiss for lack of subject matter jurisdiction (7-1). The present dispute is not properly characterized as a representation dispute and, as such, is not within the exclusive jurisdiction of the National Mediation Board. However, we dismiss for lack of subject matter jurisdiction because this case presents a "minor" dispute subject to the exclusive jurisdiction of a Board of Adjustment according to the applicable terms of the Railway Labor Act. AMFA's motion to intervene (10-1) is granted. Any other pending motions are moot. The status hearing set for 12/14/01 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | DEC 14 2001 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 33 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 12/13/2001 | |
| | | | | date mailed notice | |
| GL | courtroom deputy's initials | DEC 14 AM 8:59 | | GL | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

INTERNATIONAL ASSOCIATION OF )
MACHINISTS AND AEROSPACE WORKERS, )
AFL-CIO, )
    Plaintiff, )
     )
v. )   Case No. 01 C 4156
     )
NORTHWEST AIRLINES INC., )
     )
    Defendant. )
     )
     )

DOCKETED
DEC 1 4 2001

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Presently before us is Northwest's motion to dismiss or, in the alternative, to compel tripartite arbitration. Because we find that the present dispute is a "minor" dispute under the Railway Labor Act, we dismiss for lack of subject matter jurisdiction.

The dispute centers around allegations that, by agreeing to allow members of one employee union to do certain work, Northwest has violated a preexisting agreement with another union granting that union's employees the right to do the work. In this regard, the International Association of Machinists alleges a three count violation of various sections of the Railway Labor Act and requests that we enter judgment against Northwest on IAM's three claims, grant injunctive relief, and award IAM its attorney's fees.

### BACKGROUND

The following facts are taken from the Plaintiffs' verified complaint and are assumed to be true for the purpose of adjudicating this motion to dismiss. The two unions involved are the International Association of Machinists ("IAM") and the Aircraft Mechanics Fraternal Association ("AMFA"). The

1

33

essence of IAM's claim is that employees represented by AMFA have been assigned by Northwest to perform certain work that is contractually delegated to employees of IAM. The problem is contractual in nature in that Northwest, in collective bargaining with another union, bargained away certain job responsibilities already allegedly reserved for employees represented by IAM.

Northwest is a commercial airline carrier engaged in interstate commerce throughout the United States. The parties agree that Northwest is a "carrier by air" within the meaning of the Railway Labor Act, 45 U.S.C. § 181, and is governed by the Act's statutory requirements. IAM is the certified collective bargaining representative of approximately 19,000 employees at Northwest, including employees designated as "Equipment Service Employees" ("ESE"). AMFA is a certified collective bargaining representative for Northwest's Mechanics.

IAM and Northwest are parties to a collective bargaining agreement governing ESEs and Stock Clerk Personnel executed in February 1999. That agreement provides in part that the work of performing "air starts"[1] on aircraft is within the scope of the ESE classification. In addition, the agreement provides that cleaning the aircraft is within the ESE classification. IAM acknowledges, however, that cleaning is normally reserved for the cleaners classification under the Mechanics class and that Northwest has agreed to divide the cleaning work at different locations between the Mechanics and the ESEs.

Northwest and AMFA entered into a collective bargaining agreement in May 2001 following AMFA's election as the collective bargaining representative for Northwest's Mechanics. According to IAM, while the AMFA-Northwest agreement purported to only govern the conditions of employment for Northwest's Mechanics, it in fact directly altered and affected the terms and conditions of employment for Northwest's ESEs as well. For example, the AMFA-Northwest agreement purports to eliminate the role of ESEs in performing air starts, specifying that air starts are technician work and,

---

[1]An air start is a fall back method of starting a jet engine using compressed air applied from free standing equipment directly to the engine. It is used when, for whatever reason, an engine's internal supply of compressed air is low.

2

as such, are within the jurisdiction of AMFA. Thereafter, Northwest announced its intention to cease using ESEs for airstarts and to instead use Mechanics. In addition, and again according to IAM, the AMFA-Northwest agreement purports to formally eliminate the role of ESEs in performing aircraft cleaning duties. Thereafter, Northwest announced its intention to cease using ESEs for aircraft cleaning at specified locations.

Count I of the Complaint alleges a violation of Section 2, First of the Railway Labor Act, 45 U.S.C. §152, making it the "duty of all carriers . . . to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions." Count II of the complaint alleges violations of Section 2, Seventh and Section 6 of the Railway Labor Act when Northwest altered the established rules and working conditions of the IAM-represented ESEs. Finally, Count III alleges a violation of Section 2, Third and Fourth of the Railway Labor Act due to Northwest's putative interference with its employees' rights to be organized and represented by the IAM and have the IAM bargain on their behalf.

## ANALYSIS

### A. Standard for Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd*, 161 F.3d 443 (7th Cir. 1998), *cert. denied,* 528 U.S. 810 (1999). We should not grant a motion to dismiss unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. A district court has subject matter jurisdiction over all civil actions arising under the Constitution. *See* 28 U.S.C. §1331 (federal question).

## B. Representation Dispute

The crux of Northwest's motion to dismiss is that this case raises representation issues within the exclusive jurisdiction of the National Mediation Board ("NMB"). IAM counters that the issue is not one of representation - that is, which union represents which employees - but is rather about the nature of bargained-for contractual rights.

The Railway Labor Act defines three classes of labor disputes and provides different dispute resolution procedures for each. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1213 (7th Cir. 1996). "Minor" disputes involve the application or interpretation of an existing collective-bargaining agreement and are subject to arbitration by a System Board of Adjustment. 45 U.S.C. § 184. "Major" disputes involve the formation of collective-bargaining agreements, and the resolution of such disputes is governed by § 6 of the Railway Labor Act, 45 U.S.C. § 156. "Representation" disputes, by contrast, involve defining bargaining units and determining the employee representative for collective bargaining. Federal courts have no jurisdiction to address representation disputes under the Railway Labor Act, as Congress intended such matters to be left exclusively to the NMB. *Switchman's Union v. Nat'l Mediation Bd.*, 320 U.S. 297 (1943); *United Transp. Union*, 78 F.3d at 1213.

Northwest's reliance on the holding in *Air Line Employees Ass'n v. Republic Airlines, Inc.*, 798 F.2d 967 (7th Cir.), *cert. denied*, 479 U.S. 962 (1986), is inapposite. In that case, a union (ALEA) sued Northwest when, following Northwest's merger with Republic Airlines, Northwest entered into a transition agreement with two other unions to represent the newly combined workforce. The court, in dismissing the case, found that ALEA's claim was essentially representational in character.

The present case does not resemble the factual setting of *Air Line Employees*. Here, IAM does not question which craft or class it does or should represent. Neither party disputes that IAM is the certified collective bargaining representative for Northwest's ESEs. Rather, the present dispute hinges on IAM's allegation that Northwest bargained away certain working conditions that were previously covered by IAM's existing collective bargaining agreement. For example, the complaint alleges that

4

until May 2001, the work of performing air starts was expressly set forth only in the ESE contract, and with one exception air starts were performed exclusively by ESEs. In May 2001, however, Northwest entered into an agreement with AMFA by which air starts became the exclusive work of Mechanics represented by AMFA. Such a dispute is not representational in character since IAM does not seek to represent Northwest's Mechanics. Rather, IAM seeks to preserve those working conditions for its ESEs that it alleges were bargained away. Northwest's contention that the present dispute is representational in character is without merit and, accordingly, its motion to dismiss on that basis is denied.

### C. Minor Dispute

Northwest alternatively moves that we compel joinder of AMFA as a necessary party and compel tripartite arbitration.[2] Such arbitration is warranted, Northwest claims, because the complaint presents, at best, a "minor" dispute of contract interpretation that is within the exclusive jurisdiction of an arbitration board under the Railway Labor Act. IAM counters that, while it does not oppose AMFA's joinder as a third party, the present case is not a "minor" dispute and arbitration is as such not an appropriate remedy. We agree with Northwest.

A "minor" dispute under the Railway Labor Act, "is a dispute growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *United Transp. Union v. Illinois Central R.R.*, 998 F.Supp. 874, 880 (N.D. Ill. 1998). A board of adjustment has exclusive jurisdiction over minor disputes. *Consolidated Rail Corp. v. Ry. Labor Executives Corp.*, 491 U.S. 299, 304 (1989). The test is whether the conflict can be resolved by reference to an existing agreement. *Id.* at 881. A "major" dispute, by contrast, "is one in which a party wants to change an existing collective bargaining agreement." *Id.* A "major" dispute arises, as Northwest points out, where there is an effort to "change the terms of one [collective bargaining

---

[2]AMFA, the third party mentioned in Northwest's motion to compel joinder, itself files a motion to intervene in this action. Neither Northwest nor IAM oppose AMFA's motion. As such, we hereby grant AMFA's motion to intervene in this case.

5

agreement], and therefore the issue is not whether an existing agreement controls the controversy." Northwest Mot., n.9 (citing *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

There is some support for IAM's notion that the present dispute is major in character. It is not clear that the present dispute could be resolved by reference to an existing agreement. The problem, after all, is not so much in the proper interpretation of the IAM or the AMFA agreements as it is with whether or not Northwest violated the provisions of the Railway Labor Act when it granted certain duties to AMFA employees. Indeed, Northwest itself concedes that "IAM essentially seeks to reform AMFA's collective bargaining agreement." Northwest Mot., p. 12. If this is true, then by the definition of "major" dispute that Northwest supplies, the present controversy would be considered "major" for our purposes.

Northwest's gaffe in this regard might be dispositive but for the direction laid out by the Seventh Circuit in *Brotherhood of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914 (7th Cir. 1985). In that case, the Seventh Circuit held that a similar three-cornered work assignment dispute, i.e. a "dispute between two unions, with the employer siding with one of them," was a minor dispute. *Id.* at 919. Indeed, the court's ruling was expansive in its recognition that, not only are almost all such three-cornered disputes to be considered minor, all doubts about the nature of a dispute should be resolved in favor of labeling it minor. *Id.* at 919-920. Such a tendency reflects "an understandable judicial preference for arbitration over economic warfare." *Id.* at 920. As the court specifically pointed out:

> Just as it is contract interpretation when a court tries to figure out what the parties meant by an exchange of letters creating a contract between them, so is it contract interpretation when a labor arbitrator decides whether provisions of separate contracts are inconsistent and if so which provision should be given precedence as the most authentic expression of the parties' intent. . . . A determination that a contract has been modified by another contract . . . is itself contractual interpretation, and is within the jurisdiction of the arbitrators under the compulsory-arbitration scheme established by the Railway Labor Act.

*Id.* at 923. The Seventh Circuit's clear language in this regard is controlling here, and accordingly we find that IAM's allegations constitute a "minor" dispute under the Railway Labor Act. As a minor

6

dispute, this case is subject to the exclusive jurisdiction of a board of adjustment. *Consolidated Rail Corp.*, 491 U.S. at 304. As such, we are obliged to dismiss this case for lack of subject matter jurisdiction in favor of the arbitration scheme laid out in the Railway Labor Act.

## CONCLUSION

In sum, we deny Northwest's first motion to dismiss for lack of subject matter jurisdiction. The present dispute is not properly characterized as a representation dispute and, as such, is not within the exclusive jurisdiction of the National Mediation Board. However, we dismiss for lack of subject matter jurisdiction because this case presents a "minor" dispute subject to the exclusive jurisdiction of a Board of Adjustment according to the applicable terms of the Railway Labor Act. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 12/13/01